Christopher M. Ault, #11000
Brittani S. Harris, #13734
THE AULT FIRM, P.C.
8817 South Redwood Road, Ste. A
West Jordan, Utah 84088
Phone: 801-539-9000
Fax: 801-207-1056
Email: bharris@aultlegal.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MEAGAN DEADRICH, personally and behalf of the ESTATE OF UNBORN BABY DEADRICH;<br><br>Plaintiffs,<br><br>v.<br><br>SALT LAKE COUNTY, and DOES 1-10, inclusive,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:20-cv-00108-EJF<br><br>Judge Evelyn J. Furse<br><br>DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiffs by and through counsel of record and complains against the named Defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States.
2. Federal jurisdiction is appropriate in this situation pursuant to 42 U.S.C. §1983. Plaintiffs allege that the local officials of the Salt Lake County Sheriff's Office deprived the her and her unborn baby of their rights and privileges secured by the United States Constitution and other federal laws to be named below.

3. Venue is proper in this court under 28 U.S.C. § 1391(b) because Defendants reside in this district, and all incidents, events, and occurrences giving rise to this action occurred in this district.
4. At all times relevant hereto, Plaintiff Meagan Deadrich was in individual residing in the State of Utah.
5. Upon information and belief, at all times relevant hereto, Defendant Salt Lake County is and was a municipal corporation existing under the laws of the State of Utah.
6. The County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies including but not limited to the Salt Lake County Sherriff's Office and its agents and employees.
7. At all times relevant hereto, the County was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Salt Lake County Sherriff's Office and its employees and agents complied with the laws of the United States and the State of Utah.
8. At all times relevant hereto, Does 1-10 are sheriff's deputies and other Salt Lake County employees working in the Salt Lake County Jail.
9. At all times relevant hereto, Does 1-10 were acting under the color of law within the course and scope of their duties as employees of Salt Lake County.
10. At all the times relevant hereto, Does 1-10 were acting with the complete authority and ratification of their principal, Defendant Salt Lake County.
11. Upon information and belief, at all times relevant hereto, Does 1-10 were residents of Salt Lake County, state of Utah.

12. In doing the acts and failing and omitting to act as described below Defendants Does 1-10 were acting on the implied and actual permission and consent of Defendant County.
13. The true names and capacities, whether individual, corporate, association, or otherwise of Defendants Does 1-10- inclusive, are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names. Plaintiffs may seek leave to amend this Complaint to show the true names and capacities of these Defendants if and when new information comes to light.

**BACKGROUND FACTS**

14. Plaintiffs re-assert the allegations made in paragraphs one through 13 as if they had been restated verbatim herein.
15. On or around February 2018, Plaintiff was booked into the Salt Lake County Metro Jail. At the time she was approximately 26 weeks pregnant.
16. Jail staff was aware that Plaintiff was pregnant was she was booked.
17. While in custody, Plaintiff did not receive any standard pre-natal care.
18. Upon information and belief, the Salt Lake County Jail had no intention of providing standard prenatal care and has a policy and procedure of failing to provide standard prenatal care.
19. While Plaintiff was in custody she began to bleed from her uterus.
20. Plaintiff requested medical care numerous times, but was not seen by anyone.
21. Jail staff told Plaintiff that uterine bleeding was normal and that her only recourse was to lie down and rest.
22. Plaintiff continued to bleed heavily for approximately two weeks. She continued to ask for medical care, and she continued to receive none.

23. Upon information and belief, it is the custom and policy, whether written or implied, of Salt Lake County to not provide adequate medical care to expecting mothers and to ignore their complaints and needs.
24. On or around March 7, 2018, Plaintiff was finally taken to the hospital, where it was discovered that the unborn baby had died.
25. Upon information and belief, it is common practice and custom, whether written or implied, for the Salt Lake County jail to take inmates complaining of medical needs to the hospital at the end of their sentences right before they are released.
26. The damage due to lack of medical care was so extensive that Plaintiff had to have her uterus removed.
27. Plaintiff is no longer able to bear children.
28. Plaintiff has suffered and continues to suffer severe emotional trauma due to this loss.
29. Plaintiff's post-partum recovery period was difficult both physically and emotionally.

**FIRST CAUSE OF ACTION**
**Municipal Liability – Lack of Proper Medical Care as to standard pre-natal care.**

30. Plaintiff re-asserts the allegations made in paragraphs one through 30 as if they had been restated verbatim herein.
31. Defendants had a duty under the Eighth Amendment of the United States Constitution to provide the Plaintiff with adequate and appropriate medical care under the circumstances pursuant to *Estelle v. Gamble*, 429 U.S. 97 (1974).
32. Defendants acted with deliberate inference constituting cruel and unusual punishment when the Plaintiff did not receive standard pre-natal care for her third trimester.
33. Jail personnel showed a deliberate indifference to the Plaintiff's medical needs when she was given no prenatal care whatsoever.

34. Jail personnel knew or should have known that their treatment of Plaintiff would lead to a lack of reasonable medical care that would constitute cruel and an unusual punishment in violation of the Eighth Amendment.

35. There has also been a consistent pattern of behavior in which Jail personnel have refused to adequately give inmates adequate prenatal care.

36. Upon information and belief, it was the official policy and custom of the Salt Lake County Jail, whether written or implied, to inadequately provide prenatal care to pregnant inmates.

37. The Plaintiff and her unborn child were damaged due to this indifference.

38. The actions of jail staff and Salt Lake County are the direct and proximate causes of the damage to the Plaintiff and her unborn baby.

**SECOND CAUSE OF ACTION**
**Municipal Liability – Lack of Proper Medical Care as to Uterine Bleeding**

39. Plaintiffs re-assert the allegations made in paragraphs one through 38 as if they had been restated verbatim herein.

40. Defendants had a duty to provide adequate medical care to Plaintiff regarding her uterine bleeding

41. Decedents failed to provide adequate medical care for uterine bleeding when Plaintiff was not seen by a medical provider for weeks.

42. Defendants knew or should have known that failing to treat a pregnant inmate who was suffering from uterine bleeding would cause the Plaintiff to receive inadequate medical care in violation of the Eighth Amendment.

43. Upon information and belief, there has been a continued pattern of behavior on behalf of the Defendants in failing to adequality treat pregnant inmates.

44. Defendants acted with deliberate indifference to the needs of the Plaintiff and her constitutional rights.

45. Upon information and belief, it was the official policy and custom of the Salt Lake County Jail whether, written or implied, to inadequately treat pregnant inmates.

46. The Plaintiff and her unborn child were damaged due to this behavior.

47. The actions of jail staff and Salt Lake County are the direct and proximate causes of the damage to Plaintiff and her unborn baby.

**THIRD CAUSE OF ACTION**
**Wrongful Death**

48. Plaintiffs re-assert the allegations made in paragraphs one through 47 as if they had been restated verbatim herein.

49. Defendants had a duty to provide the Plaintiff with adequate medical care.

50. Defendants breached that duty when Plaintiff was given no standard prenatal care and no emergency care for her uterine bleeding.

51. An unborn fetus is a person in accordance with Utah Code Ann. §78-3-106.

52. The Defendants negligently and wantonly caused the death of Plaintiff's unborn child.

53. The actions of jail staff and Salt Lake County are the direct and proximate cause of the unborn baby's death.

**FOURTH CAUSE OF ACTION**
**Gross Negligence**

54. Plaintiff re-asserts the allegations made in paragraphs one through 53 as if they had been restated verbatim herein.

55. Defendants had a duty to provide the Plaintiff with adequate medical care.

56. Defendants breached that duty when the Plaintiff was not given any pre-natal care and allowed to bleed for weeks.
57. The Defendants res ipso facto breached their duty of care when Plaintiff's unborn child died and her uterus was removed.
58. The Defendants acted with a reckless disregard for Plaintiff and her unborn baby that indicated an utter indifference to Plaintiff and the baby' health and the consequences of the Defendants' behavior.
59. The Defendants failed to observe even slight care toward the Plaintiff and her unborn child.
60. The Plaintiff and her unborn child were damaged due to this behavior.
61. The actions of jail staff and Salt Lake County are the direct and proximate causes of the damage to the Plaintiff and her unborn child.

**FIFTH CAUSE OF ACTION**
**Negligent Infliction of Emotional Distress**

62. Plaintiff re-asserts the allegations made in paragraphs one through 61 as if they had been restated verbatim herein.
63. Defendants engaged in conduct, described above, that they should have realized involved an unreasonable risk of causing emotional distress to the Plaintiff.
64. Defendants should have realized that their conduct could cause the sort of emotional distress that might result in bodily harm.
65. The Defendants' conduct unintentionally or wantonly caused the Plaintiff to sustain severe emotional distress characterized by illness and bodily harm.

**SIXTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

66. Plaintiff re-asserts the allegations made in paragraphs one through 65 as if they had been restated verbatim herein.

67. Defendants' conduct was outrageous and intolerable. *See*, above paragraphs.

68. Defendants intended to cause extreme emotional distress or acted with reckless disregard of the probability of causing severe emotional distress.

69. Plaintiff suffered severe or extreme emotional distress that manifested with physical symptoms due to Defendants' conduct while she was incarcerated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. For a judgment against the Defendants jointly and severally for medical costs associated with Defendants' negligence;
2. For a judgement against the Defendants jointly and severally for funeral and burial costs associated with Defendants' negligence;
3. For a judgment against the Defendants jointly and severally for pain and suffering;
4. For a judgment against the Defendants jointly and severally for emotional distress;
5. For a judgement against the Defendants jointly and severally for punitive damages;
6. For a pre-and post-judgment interest;
7. For attorney's fees and court costs incurred in prosecuting this action; and

8. Any and all other relief that this court deems equitable and just.

SIGNED and DATED this 19th day of February 2020.

**THE AULT FIRM, P.C.**

*/s/Brittani S. Harris*
BRITTANI S. HARRIS
Attorney for Plaintiff