IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MEAGAN DEADRICH,<br><br>    Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY, a political subdivision of the State of Utah; ROSIE RIVERA, Salt Lake County Sheriff; and DOES 1-10, inclusive,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00108<br><br>Chief Judge Robert J. Shelby |

    This action concerns medical care Plaintiff Meagan Deadrich received while in custody at the Salt Lake County Metro Jail. Plaintiff brings causes of action for municipal and individual liability under 42 U.S.C. § 1983 against Defendants Salt Lake County, Salt Lake County Sheriff Rosie Rivera, and Does 1-10.[1] Defendants Salt Lake County and Rivera filed a Rule 12(b)(6) Motion to Dismiss, arguing Plaintiff has failed to state a claim against the County and Rivera.[2] For the reasons explained below, Defendants' Motion is GRANTED.

---

[1] *See* dkt. 6.

[2] *See* dkt. 13.

## BACKGROUND[3]

In February 2018, Plaintiff was booked into Salt Lake County Metro Jail.[4] Plaintiff was approximately 26 weeks pregnant at the time of booking.[5] Plaintiff did not receive any standard prenatal care while in custody.[6]

At some unidentified point while she was in custody, Plaintiff began to bleed from her uterus.[7] Plaintiff requested medical care but received none.[8] Jail staff told Plaintiff that uterine bleeding was normal and that her only recourse was to lie down and rest.[9] Plaintiff continued to bleed heavily for approximately two weeks.[10] Plaintiff again requested medical care but continued to receive none.[11] On March 7, 2018, Plaintiff was taken to the hospital, where it was discovered that her unborn child had died.[12] Plaintiff required surgery to have her uterus removed and is no longer able to bear children.[13]

Plaintiff filed this suit on February 20, 2020, and filed on March 31, 2020 a First Amended Complaint (FAC).[14] On June 8, 2020, Defendants Salt Lake County and Rivera filed a Motion to Dismiss, arguing the FAC fails to state a claim upon which relief can be granted.[15]

---

[3] Because this case is before the court on a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] Dkt. 6 ¶ 17.

[5] Dkt. 6 ¶ 17.

[6] Dkt. 6 ¶ 19. The FAC defines "standard prenatal care" to include "monthly and weekly check-ups, standard tests, and routine ultrasounds." Dkt. 6 ¶ 46.

[7] Dkt. 6 ¶ 21.

[8] Dkt. 6 ¶ 22.

[9] Dkt. 6 ¶ 23.

[10] Dkt. 6 ¶ 26.

[11] Dkt. 6 ¶ 26.

[12] Dkt. 6 ¶ 31.

[13] Dkt. 6 ¶¶ 33–34.

[14] Dkt. 2; dkt. 6.

[15] Dkt. 13.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."[16] Under Rule 12(b)(6), a court must dismiss causes of action that "fail[] to state a claim upon which relief can be granted."[17] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[18] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[20] However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[21] The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pleaded facts state a plausible claim for relief.[22] "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[23]

---

[16] Fed. R. Civ. P. 8(a)(2).

[17] Fed. R. Civ. P. 12(b)(6).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[19] *Id.*

[20] *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[21] *Iqbal*, 556 U.S. at 678.

[22] *Id.* at 679.

[23] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

## ANALYSIS

Plaintiff asserts causes of action against Defendants Salt Lake County and Rivera under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[24]

Defendants argue the FAC fails to state a claim under § 1983 against either the County or Rivera.[25] The court addresses each argument in turn.

### I. MUNICIPAL LIABILITY

Plaintiff asserts two causes of action against Salt Lake County for municipal liability under § 1983. The first is premised on the County's alleged failure to provide Plaintiff with standard prenatal care in violation of the Eighth and Fourteenth Amendments.[26] The second is premised on the County's alleged failure to provide Plaintiff with proper medical care concerning her uterine bleeding in violation of the Eighth and Fourteenth Amendments.[27] The County argues Plaintiff's claims, as pleaded, fail to state a claim upon which relief can be granted.[28] The court agrees.

A municipality may be liable under § 1983 if "the [municipality] itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[29] But a

---

[24] 42 U.S.C. § 1983.

[25] Defendants' Motion does not seek dismissal of the claims against Does 1-10. Thus, the court does not address those claims herein.

[26] Dkt. 6 ¶¶ 37–51.

[27] Dkt. 6 ¶¶ 52–67.

[28] Dkt. 13 at 4–9.

[29] *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

municipality is liable only for its own acts, and it cannot be held vicariously liable under § 1983 for its employees' actions.[30] To that end, "to prove a § 1983 claim against a municipality, a plaintiff must show the existence of a municipal policy or custom which directly caused the injury."[31] A municipal policy or custom can take a number of forms and "includes a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees."[32]

The County argues Plaintiff has failed to identify an official policy or custom that would subject it to municipal liability under § 1983.[33] In response, Plaintiff argues the County "knew that pregnant women required different medical care than was currently being provided, yet they did nothing about it" and "the failure to create a policy where one is desperately needed is sufficient" to prove the existence of a municipal policy that caused the injury.[34] In short, Plaintiff seeks to prove the existence of a municipal policy or custom through the County's

---

[30] *Id.*

[31] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

[32] *Id.*

[33] Dkt. 13 at 5.

[34] Dkt. 18 at 3. The constitutional injury asserted under both causes of action is the denial of Plaintiff's Eighth Amendment right to adequate medical care under *Estelle v. Gamble*, 429 U.S. 97, 104 (197) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.").

inaction. In the court's estimation, Plaintiff has failed to plead sufficient factual allegations in support of her theory.[35]

As the Tenth Circuit has explained, when a plaintiff in a § 1983 action "is attempting to prove a custom or policy by the Defendants' failure to act, *he must plausibly allege there is a pattern of deliberate indifference to situations like his*."[36] Here, the FAC does not plausibly allege there exists a pattern of deliberate indifference to situations like Plaintiff's. The FAC alleges in conclusory fashion, "[t]here has . . . been a consistent pattern of behavior in which Defendant County has refused to adequately give inmates adequate prenatal care."[37] But it does not contain any factual support for the conclusion that the County has exhibited a "pattern" of failing to provide adequate prenatal care. The FAC does not, for example, identify any other instances in which an inmate received inadequate prenatal care.[38] Instead, it contains only facts concerning Plaintiff's own treatment while in custody. Without more, the court cannot

---

[35] It is worth noting that Plaintiff does not identify any written or official policy concerning the County's provision of medical care to pregnant inmates. To be sure, the FAC alleges "it . . . is the official policy and custom of the Salt Lake County Jail . . . to inadequately provide prenatal care to pregnant inmates" and "[u]pon information and belief, it was the official policy and custom of the Salt Lake County Jail . . . to inadequately treat pregnant inmates." Dkt. 6 ¶¶ 44, 65. But these allegations are nothing more than a formulaic recitation of the elements of a § 1983 claim and are—standing alone—insufficient to satisfy *Twombly*'s pleading standard. *See Pyle*, 874 F.3d at 1266 ("Here, the district court concluded Jones's complaint failed to adequately allege either a municipal policy, or a link between a policy or custom and the alleged injury. Jones argues his complaint is sufficient because it contains an allegation it was the policy of Cottonwood Heights to query employees' prescription drug records without a warrant. It is true Jones's complaint does so allege, but this allegation is the type of 'formulaic recitation of the elements of a cause of action' that is insufficient to meet the *Twombly* pleading standard.").

[36] *Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 963 (10th Cir. 2018) (unpublished) (emphasis added). The Tenth Circuit has further explained that, "[e]vidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable and patently obvious." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (citation omitted) (internal quotation marks omitted). Because neither party meaningfully addresses this exception in their briefing, the court does not address it here.

[37] Dkt. 6 ¶ 43. The FAC contains several allegations to this effect. *See*, *e.g.*, dkt. 6 ¶ 57 ("Upon information and belief, there has been a continued pattern of behavior on behalf of the Defendant County in failing to treat critical inmates and to specifically address the needs of pregnant inmates.").

[38] In her Opposition, Plaintiff states "Ms. Deadrich . . . is not the first woman to lose a baby in the Salt Lake County Jail, and until things change, she will not be the last," dkt. 18 at 3, and "the jail failed to provide any [prenatal] care whatsoever to Plaintiff and all the other women like her who have been, are, or will be incarcerated in the Salt Lake County Jail," dkt. 18 at 5–6. But the FAC contains no factual allegations to this effect.

reasonably infer that the County's inaction amounted to the existence of a policy to provide inadequate treatment to pregnant inmates.[39]

## II. INDIVIDUAL LIABILITY

Plaintiff asserts two causes of action against Rivera for individual liability under § 1983. The first is premised on the alleged failure to provide Plaintiff with standard prenatal care, and the second is premised on the alleged failure to provide Plaintiff with proper medical care concerning her uterine bleeding.[40] Rivera argues Plaintiff's claims, as pleaded, fail to state a claim upon which relief can be granted.[41] The court agrees.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."[42] Plaintiff's individual capacity claim against Rivera is predicated on a theory of supervisory liability.[43] A plaintiff seeking to impose supervisory liability "must

---

[39] *See Sandberg*, 727 F. App'x at 964 ("Here, despite claiming to 'specifically allege' the policy or custom that Englewood and its officials had in place, Sandberg's complaint never sets out the text of any Englewood policy. Nor does the complaint describe any prior incidents that would have established a pattern or practice on the part of the city that could cause us to view subsequent inaction as evidence of a policy of deliberate indifference. Thus, Sandberg's complaint does not identify a custom or policy that the officers allegedly applied."); *see also Coffey v. McKinley Cty.*, 504 F. App'x 715, 719 (10th Cir. 2012) (unpublished) ("One prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.").

[40] Dkt. 6 ¶¶ 68–100.

[41] Dkt. 13 at 11–14. Rivera also argues the claims should be dismissed because they are best understood as claims against Rivera in her official capacity, which would be foreclosed by Plaintiff's claims against Salt Lake City. Dkt. 13 at 10 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The FAC itself does not specify whether the claims are brought against Rivera in her official or personal capacity, but Plaintiff's Opposition clarifies that these claims are asserted against Rivera in her personal capacity. Dkt. 18 at 6. Thus, the court will treat them as such.

[42] *Brown v. Montoya*, 662 F.3d 115, 1163 (10th Cir. 2011).

[43] The FAC does not allege that Rivera had any personal contact with Plaintiff or that Rivera had direct and contemporaneous knowledge of Plaintiff's treatment while in custody. Thus, Plaintiff's claim against Rivera must be premised on a theory of supervisory liability. *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) ("Ms. Cox's individual-capacity claim against Sheriff Glanz is predicated on a supervisory-liability theory. It is undisputed that Sheriff Glanz had no personal contact with Mr. Jernegan or direct and contemporaneous knowledge of Mr. Jernegan's treatment by Jail officials in July 2009."). And Plaintiff's Opposition confirms as much. Dkt. 18 at 7 ("Sheriff Rosie Rivera was in the unique position to make policy concerning the Salt Lake County Jail because she is the Sheriff in charge of the department that oversees the jail.").

show an 'affirmative link' between the supervisor and the constitutional violation."[44] "The requisite showing of an 'affirmative link' between a supervisor and the alleged constitutional injury has '[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.'"[45] Rivera argues the FAC fails to allege facts sufficient to establish the first and third prongs.[46] The court agrees, at least with respect to the third prong.

As an initial matter, the court notes the Tenth Circuit has—in dicta—suggested that a plaintiff could satisfy the personal involvement prong by showing that the defendant "was responsible for but failed to create policies" to protect a plaintiff's constitutional rights.[47] Here, Plaintiff argues "Ms. Rivera was in the specific position to make changes regarding the lack of policies ensuring proper pre-natal care, but she failed to do so."[48] The court need not determine whether this allegation satisfies the personal involvement prong because, even if it did, the court concludes Plaintiff's claim fails on the third prong.

"[T]o establish the third prong of the constitutional-violation analysis—culpable state of mind—a § 1983 plaintiff alleging an Eighth Amendment violation must prove that the defendant acted with deliberate indifference."[49] A showing of deliberate indifference requires that "the official actually be 'aware of facts from which the inference could be drawn that a substantial

---

[44] *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citation omitted).

[45] *Cox*, 800 F.3d at 1248 (citation omitted).

[46] Dkt. 13 at 11–12; dkt. 20 at 6–7.

[47] *Perry v. Durborow*, 892 F.3d 1116, 1121–22 (10th Cir. 2018) ("Perry could satisfy the personal-involvement requirement by showing that, e.g., Durborow was responsible for but 'failed to create and enforce policies to protect' her from the rape.").

[48] Dkt. 18 at 6.

[49] *Keith v. Koerner*, 843 F.3d 833, 847–48 (10th Cir. 2016).

risk of serious harm exists, and [the official] must also draw the inference.'"[50]  Thus, a plaintiff must show: (1) the defendant had actual knowledge of facts from which an inference could be drawn that a substantial risk of harm exists and (2) the defendant actually drew that inference. The FAC falls short of making such a showing.

As discussed above, the FAC does not allege facts showing a pattern of failure to provide prenatal care to inmates.  Consequently, the FAC does not allege facts showing that Rivera had actual knowledge of any pattern or tendency of the Salt Lake County Jail to deny pregnant inmates adequate medical care.  At most, the FAC alleges that the Salt Lake County Jail has no policies concerning or facilities for prenatal care.[51]  But the absence of policy or lack of facilities alone does not support a reasonable inference that a substantial risk of harm existed.  Indeed, it is conceivable that inmates would receive adequate prenatal care even in the absence of official policies concerning or facilities for prenatal care.[52]  Without more, the court cannot reasonably infer that Rivera had actual knowledge of facts from which she could draw an inference that a substantial risk of harm existed.  Thus, the FAC fails to allege facts sufficient to show Rivera acted with deliberate indifference and Plaintiff's claims against Rivera must be dismissed.

---

[50] *Id.* (citation omitted).  In her Opposition, Plaintiff seems to argue Rivera had actual knowledge of the risk of harm because she is female, is a mother, and has made public promises to combat racial and gender bias.  Dkt. 18 at 7.  The court finds these facts to be wholly irrelevant to its deliberate indifference analysis.  And, in any event, these factual allegations are not found in the FAC.

[51] Dkt. 6 ¶ 45.

[52] As Plaintiff argues in her Opposition, "[m]odern prenatal care has been around for decades" and it is "*common knowledge*" that pregnant women require certain prenatal care such as "monthly well-checkups" or visits to the doctor "if they begin to bleed during pregnancy."  Dkt. 18 at 5 (emphasis added).  Thus, it is conceivable that Jail staff would be aware of the medical needs of pregnant inmates even in the absence of an official policy concerning prenatal care.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss[53] is GRANTED. Plaintiff's claims against Defendants Salt Lake County and Rosie Rivera are DISMISSED WITHOUT PREJUDICE.  Should Plaintiff wish to file a Second Amended Complaint, she must do so within sixty (60) days of this Order.

**SO ORDERED** this 15th day of September 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[53] Dkt. 13.